## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**MARTHA SHELDON**                          **CIVIL ACTION**

**VERSUS**                                  **CASE NO. 16-16293**

**C&C FISHERY, LLC, et al.**                **SECTION: "G"(3)**

## ORDER

Pending before the Court is Plaintiff Martha Sheldon's ("Plaintiff") "Motion to Remand."[1] Having considered the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court will grant the motion and remand this case to the Civil District Court for the Parish of Orleans, State of Louisiana.

## I. Background

### A.    *Factual Background*

In this litigation, Plaintiff alleges that her son, Joshua Sheldon ("Decedent"), suffered a fatal injury while aboard Defendant C&C Fishery, LLC's ("C&C Fishery") vessel, the F/V MORNING STAR ("MORNING STAR"), due to the alleged negligence of C&C Fishery and the unseaworthiness of the vessel.[2] Plaintiff alleges that Decedent was a seaman pursuant to the Jones Act and on board the MORNING STAR as an employee of Defendant Riverside Technology ("Riverside").[3] According to Plaintiff, on March 13, 2016, the MORNING STAR embarked on a

---

[1] Rec. Doc. 10.

[2] Rec. Doc. 1-1 at 2.

[3] *Id.* at 1.

1

fishing trip with Decedent onboard.[4] Shortly after embarking, Plaintiff contends that Decedent became extremely ill.[5] Despite his serious illness, Plaintiff avers that the MORNING STAR continued to the designated fishing spot without requesting emergency medical assistance.[6]

Plaintiff alleges that the crew of the MORNING STAR did not send an emergency distress transmission requesting emergency medical assistance until three days later on March 16, 2016.[7] According to Plaintiff, the transmission indicated that Decedent had not "moved from his rack since they had left port and is unable to move and cannot speak (only gurgles and grunts in response to questions)."[8] Plaintiff states that Decedent was then taken to the Deepwater Magnolia Rig where he was transported via life-flight to a hospital on March 17, 2016, four days after he first became symptomatic.[9] Plaintiff asserts that Decedent was diagnosed with an advanced Methicillin-resistant Staphylococcus aureus ("MRSA") infection that he had allegedly contracted while on the MORNING STAR.[10] Plaintiff states that Decedent subsequently passed away due to complications of the MRSA infection, which Plaintiff alleges was the result of the negligent acts and inactions

---

[4] *Id.* at 3.

[5] *Id.*

[6] *Id.*

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] *Id.*

2

of Defendants C&C Fishery and Riverside (collectively, "Defendants").[11] Plaintiff asserts claims under the Jones Act, the general maritime law, and Louisiana state law.[12]

## B.    Procedural Background

Plaintiff filed a "Seaman's Original Petition for Damages" in the Civil District Court for the Parish of Orleans, State of Louisiana, on August 12, 2016.[13] Defendant Riverside was served on October 13, 2016, and removed the case to this Court on November 10, 2016.[14] Riverside alleges that removal is proper because Plaintiff's Jones Act claim was fraudulently pleaded, and thus this Court has federal question jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and the Federal Employees' Compensation Act ("FECA").[15]

On December 12, 2016, Plaintiff filed the instant motion to remand.[16] On December 20, 2016, Riverside filed a motion to continue the submission date on Plaintiff's motion to remand,[17] which the Court subsequently granted.[18] On January 10, 2017, Defendant C&C Fishery filed an opposition to the motion to remand.[19] On January 10, 2017, Plaintiff filed a joint motion to dismiss

---

[11] *Id.*

[12] *Id.*

[13] *Id.* at 1.

[14] Rec. Doc. 1 at 8.

[15] *Id.* at 3–6.

[16] Rec. Doc. 10.

[17] Rec. Doc. 11.

[18] Rec. Doc. 13.

[19] Rec. Doc. 14.

Riverside with prejudice,[20] which the Court granted on January 11, 2017.[21] On May 15, 2017, with leave of Court, Plaintiff filed a reply to C&C Fishery's opposition to Plaintiffs' motion to remand.[22] On May 26, 2017, with leave of Court, C&C Fishery filed a sur-reply.[23]

## II. Parties' Arguments

### A.    *Riverside's Notice of Removal*

In Riverside's Notice of Removal, Riverside asserts that removal of this action to federal court is proper, as this Court has federal question jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and FECA.[24]

### 1.    Plaintiff's Jones Act Claim

First, Riverside admits that Plaintiff's state court Petition asserts claims pursuant to the Jones Act and that Jones Act cases are typically non-removable under 28 U.S.C. § 1445(a).[25] However, Riverside argues that a defendant may overcome the bar to removal if it can show that the Jones Act claim was "fraudulently pleaded" to prevent removal.[26] For example, Riverside points out that a court in the Southern District of Texas denied a motion to remand a Jones Act case because it found that the plaintiff was not a "seaman" under the Jones Act, and thus the

---

[20] Rec. Doc. 15.

[21] Rec. Doc. 19.

[22] Rec. Doc. 29.

[23] Rec. Doc. 37.

[24] Rec. Doc. 1 at 3–6.

[25] *Id.* at 3.

[26] *Id.* (citing *Sanders v. Cambrian Consultants (CC) America, Inc.*, 132 F. Supp. 3d 853, 855 (S.D. Tex. 2015) (citing *Lackey v. Atl. Richfield Co.*, 990 F.2d 202, 207 (5th Cir. 1993)); *Skinner v. Schlumberger*, No. 13-3146, 2014 WL 791541, at *1 (W.D. La. Feb. 25, 2014), *aff'd*, No. 15-30650, 2016 WL3667576 (5th Cir. July 8, 2016)).

plaintiff had "fraudulently pled" a Jones Act claim.[27] In particular, that court noted that the plaintiff was employed solely as a "marine mammal observer," and that "all of the caselaw provided indicate[d] that individuals who are employed solely as statutorily required scientific personnel do not contribute to the function of the vessel."[28] Indeed, Riverside represents that "[n]umerous courts have concluded that fisheries observers are not Jones Act seaman."[29]

Here, Riverside argues that Plaintiff's Jones Act claim was fraudulently pleaded, and thus does not bar removal of this case from state court.[30] Riverside points out that it is a federal government contractor with the National Oceanic and Atmospheric Administration ("NOAA")/National Marine Fisheries Service ("NMFS") and was working pursuant to a contract with NOAA/NMFS at the time of Decedent's illness in March 2016.[31] According to Riverside, its contract with NOAA/NMFS includes the provision of fishery observers, such as Decedent, "in support of the NMFS Miami Pelagic Observer Program and the NMFS Panama City Observer Program."[32] Riverside contends that the Pelagic Observer Program requires vessels to carry NMFS-approved observers on permitted vessels at the request of the NMFS.[33] Riverside avers that

---

[27] *Id.* (citing *Sanders*, 132 F. Supp. 3d at 855).

[28] *Id.* (quoting *Sanders*, 132 F. Supp. 3d at 857).

[29] *Id.* at 7 (citing *O'Boyle v. U.S.*, 993 F.2d 211, 213 (11th Cir. 1993); *Bank of America, N.A. v. Pacific Lady*, No. 00-1114, 2001 WL 33389208, at *1 (W.D. Wash. Nov. 22, 2000); *Mason v. Alaskan Observers, Inc.*, No. 03-0140, 2001 WL 23181008, at *1 (W.D. Wash. Aug. 29, 2003); *Chauvin v. FUGRO-GEOTEAM SA*, No. 06-2290, 2007 WL 2265233, at *2 (E.D. La. Aug. 1, 2007); *Belcher v. Sundad, Inc.*, No. 07-346, 2008 WL 2937258, *1–3 (D. Or. July 18, 2008)).

[30] *Id.*

[31] *Id.* at 4.

[32] *Id.*

[33] *Id.*

5

these fishery observers do not participate in the operation of the fishing vessel, and instead are only guests aboard the vessel pursuant to Riverside's own fishery observer guidelines.[34] Riverside asserts that Decedent was hired as a Fishery Observer on October 12, 2013, and was trained at the NOAA Fisheries Lab in Miami, Florida.[35] According to Riverside, fishery observers record and collect data on fish, environmental information, biological samples, fishery violations, and marine pollution.[36] Riverside avers that Decedent was onboard the MORNING STAR at the time of his illness in his capacity as a fishery observer, and thus was not a seaman under the Jones Act.[37] Therefore, Riverside argues that because Plaintiff cannot bring a Jones Act claim, her instant Jones Action cause of action was fraudulently pleaded and cannot defeat removal of this action under 28 U.S.C. § 1445(a).[38]

### 2.    Independent basis for federal jurisdiction

Second, Riverside asserts that Plaintiff's general maritime claims do not bar removal of a case to a federal forum either.[39] Rather, Riverside argues that general maritime claims are removable when there is an independent basis of jurisdiction other than 28 U.S.C. § 1333.[40] According to Riverside, the independent basis of jurisdiction here is FECA, which provides this

---

[34] *Id.*

[35] *Id.*

[36] *Id.* at 5.

[37] *Id.*

[38] *Id.*

[39] *Id.* at 5–6.

[40] *Id.* at 6.

6

Court with federal question jurisdiction under 28 U.S.C. § 1331.[41] Riverside contends that on March 23, 2016, Shawn Sutherland, the Human Resources Director for Riverside, filed a FECA Form CA-1 on Decedent's behalf with the United States Department of Labor after he was notified that Decedent was ill and had been admitted to the hospital.[42]

Riverside points out that in *Jarmuth v. Cox*, a court in the Northern District of West Virginia found that a motion to remand must be denied when a plaintiff's claims "turn on substantial questions of federal law, most notably the FECA and the Privacy Act."[43] Here, Riverside argues that federal law makes clear that observers on a vessel are federal employees for the purposes of FECA.[44] Thus, Riverside alleges that it was the intent of Congress for observers under the Magnuson-Stevens Fishery Conservation and Management Act ("MSA") and the Marine Mammal Protection Act of 1972 ("MMPA")  not to be entitled to file claims under the Jones Act or maritime law for injuries arising from the performance of their duties as observers on vessels.[45] Accordingly, Riverside contends that, because Decedent was a federal employee rather than a Jones Act seaman, Plaintiff's claims for pecuniary losses turn on a substantial issue of interpretation of FECA.[46] Therefore, Riverside states that an independent basis of federal question jurisdiction exists to support removal.[47]

---

[41] *Id.*

[42] *Id.* at 2.

[43] *Id.* at 6 (quoting *Jarmuth v. Cox*, 2007 WL 2892957 (N.D. W.Va. Sept. 28, 2007) (internal quotation marks and citations omitted)).

[44] *Id.* at 7 (quoting 16 U.S.C. § 1881b(c)).

[45] *Id.*

[46] *Id.* at 7–8.

[47] *Id.* at 8.

**B.**    *Plaintiff's Arguments in Support of the Motion to Remand*

In her motion, Plaintiff argues that this case should be remanded to state court.[48]

**1.**    **Plaintiff's Jones Act claim**

First, Plaintiff asserts that her Jones Act claim bars removal and that Defendants have not met their "high burden" of proving that Decedent was not a seaman as defined under the Jones Act.[49] Plaintiff argues that as the removing party, Riverside has the burden of proving that Decedent was not a Jones Act seaman as alleged in Plaintiff's Petition by showing that "there is no possibility that plaintiff would be able to establish a cause of action" as a Jones Act Seaman.[50] According to Plaintiff, "[s]everal courts" have disapproved of the practice of allowing Defendants to question a plaintiff's seaman status by filing a petition of removal.[51]

Plaintiff represents that in *Chandris v. Latsis*, the United States Supreme Court devised a two-part test for determining whether an employee qualifies as a seaman under the Jones Act.[52] Plaintiff avers that under the first prong of the *Chandris* test, a seaman must "contribute to the function of the vessel or the accomplishment of the mission."[53] Plaintiff asserts that, under the second prong of the *Chandris* test, a seaman "must have a connection to a vessel in navigation (or

---

[48] Rec. Doc. 10 at 1.

[49] Rec. Doc. 10-1 at 4.

[50] *Id.* at 5 (citing *Lackey v. Atlantic Richfield Co.*, 990 F.2d 202, 207 (5th Cir. 1993); *Preston v. Grant Advertising, Inc.*, 375 F.2d 439, 440 (5th Cir. 1967); *Zertuche v. Great Lakes Dredge & Dock Co., LLC.*, 306 Fed. App'x. 93, 97 (5th Cir. 2009)).

[51] *Id.* at 6 (citing *Kattelman v. Otis Engineering Corp.*, 701 F. Supp. 560, 566 (E.D.La. 1988); *Lonthier v. Northwest Insurance Co.*, 599 F. Supp. 963, 965–66 (W.D.La. 1985); *Green v. Ross Island Sand & Gravel Co.*, 2014 WL 262133, at * 2 (N.D. Cal. Jan. 23, 2014)).

[52] *Id.* (citing *Chandris v. Latsis*, 515 U.S. 347, 368 (1995)).

[53] *Id.*

to an identifiable group of vessels) that is substantial in terms of both its duration and its nature."[54] According to Plaintiff, the purpose of the "substantial connection requirement" in the second prong is to "separate sea- based employees from those of land-based maritime workers who only have a sporadic or transient connection to a vessel and are not subject to the perils of the sea."[55]

Plaintiff asserts that Riverside only provided the Declaration of Shawn Sutherland, the Human Resources Director of Riverside, in support of removal.[56] However, Plaintiff alleges that Sutherland "presumably" spent little time aboard the vessel with Decedent and thus cannot have personal knowledge as to "what actual duties were performed or were to be performed by Decedent while aboard the vessel."[57] Moreover, Plaintiff avers that Sutherland stated in his Declaration that, while fishery observers are "guests" while aboard vessels, Decedent "was directed to provide observer services" while aboard the MORNING STAR.[58] Plaintiff argues that if reasonable persons could differ as to whether an employee was a "member of the crew," then it is a question for the jury and remand is proper.[59]

### 2. Independent basis for federal jurisdiction

Second, Plaintiff contends that Defendants have not pointed to any other basis for federal question jurisdiction.[60] According to Plaintiff, the "Savings to Suitors Clause" in 28 U.S.C.

---

[54] *Id.*

[55] *Id.* at 4–5.

[56] *Id.* at 5.

[57] *Id.*

[58] *Id.*

[59] *Id.* at 7.

[60] *Id.* at 1–2.

§ 1333(1) provides plaintiffs with the right to select their forum, either state or federal, and cases filed by a plaintiff in state court cannot be removed solely on the basis that the plaintiff brings a claim under general maritime law.[61] Rather, Plaintiff asserts that Defendants must instead identify an independent basis for federal jurisdiction beyond Plaintiff's maritime claim for removal here to be proper.[62]

Plaintiff argues that FECA, the federal workers' compensation scheme, cannot provide an independent basis for federal question jurisdiction here.[63] Plaintiff contends that Defendants have not shown that Decedent was a federal employee, as Defendants admit that Decedent was hired by Riverside and was a Riverside employee while aboard the MORNING STAR in March 2016.[64] Moreover, even if Decedent was a federal employee, Plaintiff represents that 5 U.S.C. § 8150 specifically provides that FECA "does not affect the maritime rights and remedies" of Plaintiff.[65] Plaintiff argues that one of those rights is the ability to bring a civil maritime action in state court.[66] Thus, Plaintiff contends that Defendants cannot assert FECA as a basis for removal, as it would curtail Plaintiff's right to bring her maritime action in state court.[67] Plaintiff alleges that the sole

---

[61] *Id.* at 3–4.

[62] *Id.* at 2 (citing *Gregoire v. Enterprise Marine Services, LLC*, 2014 WL 3866589 at *10 (E.D. La. Aug. 6, 2014); *Henry J. Ellender Heirs, LLC v. Exxon Mobil Corp.*, 2014 WL 4231186 at *6 (E.D. La. Aug. 26, 2014); *Riley v. Llog Exploration Co. LLC*, 2014 WL 4345002 at *5 (E.D. La. Aug. 28, 2014); *Bisso Marine Co., Inc. v. Techcrane Intern., LLC*, 2014 WL 4489618 at *4 (E.D. La. Sept. 10, 2014); *Dyche v. US Environmental Services, LLC*, 2014 WL 5473238 at *5 (E.D. Tex. Oct. 30, 2014); *Yavorsky v. Felice Navigation, Inc.*, 2014 WL 5816999 at *4 (E.D. La. Nov. 7, 2014)).

[63] *Id.* at 7.

[64] *Id.*

[65] *Id.* 7–8.

[66] *Id.*

[67] *Id.* at 8.

case cited by Riverside in support of its contention that cases under FECA are removable is distinguishable, as it involved an Army employee who did not bring any maritime or Jones Act claims.[68] Accordingly, Plaintiff argues that the plain language of FECA is clear that it cannot be used as a basis for removal in a general maritime case.[69]

### C.    Defendant C&C Fishery's Arguments in Opposition to Motion to Remand

In opposition, C&C Fishery argues that removal was proper.[70]

### 1.    Plaintiff's Jones Act claim

C&C Fishery contends that this case is not barred from removal under the Jones Act because Decedent does not qualify as a Jones Act seaman.[71] According to C&C Fishery, to qualify as a seaman for the purposes of the Jones Act, a plaintiff must: (1) "contribute to the function of the vessel or to the accomplishment of its mission;" and (2) "have a connection to a vessel in navigation (or to an identifiable group of vessels) that is substantial in terms of both its duration and nature."[72] C&C Fishery points out that Riverside is a federal government contractor that provides fishery observers like Decedent to collect data for the federal Pelagic Observer Program.[73] C&C Fishery avers that the observers are scientific personnel who "do not participate in the fishing operations of the vessel in any capacity."[74] Moreover, C&C Fishery contends that

---

[68] *Id.* (citing *Jarmuth v. Cox*, 07-33, 2007 WL 2892957, at *1 (N.D.W. Va. Sept. 28, 2007)).

[69] *Id.*

[70] Rec. Doc. 14.

[71] *Id.* at 4.

[72] *Id.* (quoting *Chandris, Inc. v. Latsis*, 515 U.S. 347, 368 (1995)).

[73] *Id.* at 1.

[74] *Id.*

Decedent had no connection to the vessel other than being assigned to it for scientific research.[75] Thus, C&C Fishery argues that because it is "undisputed" that Decedent was a fisheries observer and not a seaman, Plaintiff's Jones Act claim was "fraudulently pleaded" and cannot prevent removal of this case to federal court.[76]

### 2.    Independent basis for federal jurisdiction

Rather, C&C Fishery alleges that, as a fisheries observer, Decedent was considered an employee of the federal government for purposes of compensation under FECA.[77] C&C Fishery points out that 16 U.S.C. § 1881b(c) explicitly provides that "[a]n observer on a vessel and under contract to carry out responsibilities under this chapter [MSA] or the Marine Mammal Protection Act of 1972 (16 U.S.C. 1361 *et seq.*) shall be deemed to be a Federal employee for the purpose of compensation under the Federal Employee Compensation Act (5 U.S.C. 8101 *et seq.*)."[78] C&C Fishery asserts that FECA provides "exclusive and comprehensive compensation to federal employees who are injured or killed while in performance of their duties."[79]  According to C&C Fishery, the Sixth Circuit determined in *Turner, ex rel. Turner v. Tennessee Valley Authority* that a widow of a federal employee who drowned after falling overboard on a vessel could not assert claims under the Jones Act, because FECA is an exclusive remedy that bars such employees "from

---

[75] *Id.* at 4.

[76] *Id.* at 3.

[77] *Id.* at 2 (citing 16 U.S.C. § 1881b(c)).

[78] *Id.* at 5.

[79] *Id.* (quotation marks and alterations omitted).

commencing an action under the Jones Act or other remedial statutes."[80]  Thus, C&C Fishery argues that "FECA provides federal question jurisdiction for removal purposes."[81]

### D.    *Plaintiff's Arguments in Further Support of her Motion to Remand*

In her reply, Plaintiff argues that this case should be remanded for several reasons.[82] First, Plaintiff points out that Riverside has been dismissed from this litigation, and thus Plaintiff contends that any federal questions related to FECA were either resolved or are now moot.[83] However, Plaintiff contends that FECA does not bar actions by beneficiaries against responsible third parties.[84] "In fact," Plaintiff argues, "FECA expressly allows the United States to assert a subrogation interest against recovery from responsible third parties," and Plaintiff avers that it even permits the Secretary of Labor to require beneficiaries to file suit against responsible third parties. [85]

Second, Plaintiff argues that C&C Fishery has failed to raise an independent basis for federal jurisdiction, as the Savings-to-Suitor Clause does not confer jurisdiction on this Court in general maritime negligence cases filed in state court.[86] Because C&C Fishery is not a federal contractor or Decedent's employer, Plaintiff argues, the FECA federal question against Riverside

---

[80] *Id.* at 6 (quoting 859 F.2d 412,413–14 (6th Cir. 1988)).

[81] *Id.* at 2.

[82] Rec. Doc. 29 at 1.

[83] *Id.* at 1.

[84] *Id.* at 3.

[85] *Id.* at 3–4 (citing 5 U.S.C. § 8131).

[86] *Id.* at 1.

is moot, and thus Plaintiff is entitled to bring her civil action against C&C Fishery in state court.[87] Plaintiff avers that because C&C Fishery has pointed to no other basis for federal jurisdiction other than FECA, remand is proper.[88] Plaintiff also points out that, while C&C Fishery asserted immunity under the MMPA in its motion for summary judgment, Riverside asserted that Decedent was an observer under MSA, and no evidence has been presented that Decedent was an observer under the MMPA.[89] Moreover, Plaintiff argues that even if Decedent was an observer under the MMPA, the statute permits recovery against the vessel owner who engaged in "the complained of conduct willfully."[90] Thus, Plaintiff avers that C&C Fishery has only asserted an affirmative defense against Plaintiff's claims, and that this cannot be used to determine removal jurisdiction.[91]

Third, Plaintiff contends that C&C Fishery is a citizen of Louisiana and failed to timely remove this case as required by 28 U.S.C. § 1446.[92] Plaintiff alleges that her Petition was filed against C&C Fishery and Riverside on August 12, 2016, and that C&C Fishery filed an answer on September 9, 2016.[93] According to Plaintiff, C&C Fishery never sought timely removal, and it was not until Riverside, the federal contractor party, asserted an independent basis for federal

---

[87] *Id.* at 4.

[88] *Id.* at 5.

[89] *Id.*

[90] *Id.* at 6.

[91] *Id.*

[92] *Id.* at 1.

[93] *Id.* at 2.

jurisdiction under FECA that this case was removed.[94] Plaintiff points out that Riverside's notice of removal was filed on November 10, 2016, which was 64 days after C&C Fishery was served.[95]

**E.    *C&C Fishery's Arguments in Further Opposition to the Motion***

In its sur-reply, C&C Fishery first asserts that the dismissal of Riverside does not render the question of whether Decedent was a federal employee under FECA moot.[96] Riverside contends that the Magnuson-Stevens Fishery Conservation and Management Act ("MSA") states that observers under either the MSA or the Marine Mammal Protection Act of 1972 ("MMPA") are federal employees for the purposes of FECA.[97] Therefore, Riverside alleges that FECA provides the exclusive remedy available to Plaintiff and that this Court has federal question jurisdiction for removal purposes that is independent from Plaintiff's claims under the general maritime law.[98]

Second, C&C Fishery argues that, as the owner of the MORNING STAR, it is immune from any civil action by a fisheries observer pursuant to 16 U.S.C. § 1383a(e)(7)(A).[99] According to C&C Fishery, Section 1383a provides that fisheries observers serving on a vessel "may not bring a civil action" against the owner of the vessel for any injuries or deaths that may arise from their service as an observer.[100] C&C Fishery points to a Ninth Circuit case that held that, because observers are "thrust" on board private vessels as part of the federal government's protection

---

[94] *Id.* at 6–7.

[95] *Id.* at 7.

[96] Rec. Doc. 37 at 2.

[97] *Id.* at 3–4.

[98] *Id.* at 3.

[99] *Id.* at 2.

[100] *Id.*

efforts under the MSA and the MMPA, "Congress limited the vessel owners' liability to observers" to injuries resulting from the vessel owner's willful misconduct.[101] Here, C&C Fishery argues that Plaintiff did not allege that C&C Fishery engaged in willful misconduct.[102] Thus, because Decedent was "thrust" on the MORNING STAR, C&C Fishery contends, C&C Fishery should be afforded the immunity provided by the MMPA.[103] Finally, C&C Fishery argues that Plaintiff has not shown that it acted negligently, and thus Plaintiff's claim of negligence under the general maritime law must fail.[104]

## III. Law and Analysis

### A.    *Legal Standard*

A defendant may remove a state civil court action to federal court if the federal court has original jurisdiction over the action.[105] Pursuant to 28 U.S.C. § 1331, a district court has subject matter jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." The removing party bears the burden of demonstrating that federal jurisdiction exists.[106] In assessing whether removal was appropriate, the Court is guided by the principle, grounded in notions of comity and the recognition that federal courts are courts of limited jurisdiction, that "removal statute[s] should be strictly construed in favor of remand."[107] Remand

---

[101] *Id.* at 4 (quoting *Bauer v. Mrag Americas, Inc.*, 624 F.3d 1210, 1211 (9th Cir. 2010)).

[102] *Id.*

[103] *Id.* at 5.

[104] *Id.*

[105] 28 U.S.C. § 1441(a); *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 34 (2002).

[106] *See Allen v. R&H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995).

[107] *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).

is appropriate if the Court lacks subject matter jurisdiction, and "doubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction."[108]

In general, suits properly brought in state court under the Jones Act may not be removed.[109] However, the Fifth Circuit has recognized that in certain circumstances "defendants may pierce the pleadings to show that the Jones Act claim has been fraudulently pleaded to prevent removal."[110] The Fifth Circuit has determined that defendants sued under the Jones Act in state court may defeat a motion to remand "upon showing that plaintiffs' claims against non-diverse defendants are baseless in law and in fact and serve only to frustrate federal jurisdiction."[111] The Fifth Circuit has noted that the burden of persuasion in such a case "is a heavy one," as the removing party must show that there is "no possibility that plaintiff would be able to establish a cause of action."[112] That is, to deny remand, the district court must determine that "*as a matter of law* there was no reasonable basis for predicting that the plaintiff might establish liability."[113] The Fifth Circuit has "cautioned against pretrying a case to determine removal jurisdiction," but recognized that district courts may use a "summary judgment-like procedure" to determine

---

[108] *Acuna v. Brown & Root Inc*., 200 F.3d 335, 339 (5th Cir. 2000) (citing *Willy v. Coastal Corp*., 855 F.2d 1160, 1164 (5th Cir. 1988)).

[109] 46 U.S.C. § 30104; 28 U.S.C. § 1445(a); *Burchett v. Cargill, Inc.*, 48 F.3d 173, 175 (5th Cir. 1995).

[110] *Burchett*, 48 F.3d at 175 (quoting *Lackey v. Atlantic Richfield Co.*, 990 F.2d 202, 207 (5th Cir. 1993)).

[111] *Id.* at 175–76 (internal quotation marks and citations omitted). *See generally B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. 1981) ("In order to establish that an in-state defendant has been fraudulently joined, the removing party must show either that there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or that there has been outright fraud in the plaintiff's pleadings of jurisdictional facts.").

[112] *Burchett*, 48 F.3d at 176.

[113] *Id.* (citing *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 551 (5th Cir. 1981)) (emphasis in original).

17

whether the Jones Act claim was fraudulently pleaded.[114] In making this determination, the district court must resolve all disputed questions of fact and any ambiguities in law in favor of the plaintiff.[115]

Pursuant to 28 U.S.C. § 1333(1), district courts have original jurisdiction over any civil case of admiralty or maritime jurisdiction, "saving to suitors in all cases all other remedies to which they are entitled." The Supreme Court has interpreted the "saving to suitors" clause as preserving the concurrent jurisdiction of the state and federal courts over admiralty and maritime claims.[116] Thus, courts have concluded that general maritime claims are not removable when filed in state court absent an independent basis of jurisdiction other than 28 U.S.C. § 1333.[117]

## B.    Analysis

It is undisputed that in her "Seaman's Original Petition for Damages," Plaintiff alleges that Decedent was a "seaman pursuant to the Jones Act" and asserts a claim under the Jones Act.[118] It

---

[114] *Id.*; *Hufnagel v. Omega Serv. Indus., Inc.*, 182 F.3d 340, 345 (5th Cir. 1999);

[115] *Hufnagel*, 182 F.3d at 345 (citing *Carriere v. Sears Roebuck & Co.*, 893 F.2d 98, 100 (5th Cir. 1990); *Bobby Jones Garden Apartments, Inc. v. Suleski*, 391 F.2d 172, 177 (5th Cir. 1968)).

[116] *See Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 444 (2001) ("Thus, the saving to suitors clause preserves remedies and the concurrent jurisdiction of state courts over some admiralty and maritime claims."); *Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354, 362 (1959); *The Moses Taylor*, 71 U.S. 411, 422 (1866) ("It is well known that at the time of the adoption of the Constitution, whatever admiralty jurisdiction existed in this country, was exercised by the State courts."); *see also Gregoire v. Enter. Marine Servs., LLC*, 38 F. Supp. 3d 749, 754 (E.D. La. 2014) (Duval, J.).

[117] *Barker v. Hercules Offshore, Inc.*, 713 F.3d 208, 220 (5th Cir. 2013) (holding that "removal of maritime cases is permissible as long as there is an independent basis for federal jurisdiction"); *In re Dutile*, 935 F.2d 61, 63 (5th Cir. 1991) (noting that complete diversity of citizenship was required between the parties for removal of an admiralty claim to be proper); *Gregoire*, 38 F. Supp. 3d at 754 ("In short, general maritime law claims are not now removable—nor have they ever been—without an independent basis of jurisdiction other than 28 U.S.C. § 1333 . . . .").

[118] Rec. Doc. 1-1 at 1, 5.

is also undisputed that, in general, a Jones Act case filed in state court is not removable.[119] Nonetheless, the Fifth Circuit has determined that a Jones Act claim prevents removal only "in the absence of any issue of a fraudulent attempt to evade removal."[120] For example, the Fifth Circuit has held that "like fraudulent joinder cases, defendants sued under the Jones Act can defeat remand upon showing that plaintiffs' claims against non-diverse defendants are baseless in law and in fact and serve only to frustrate federal jurisdiction."[121] In other words, removal is proper if a defendant can show that a Jones Act claim was "fraudulently pleaded."[122]

In her motion, Plaintiff asserts that remand is proper because: (1) C&C Fishery has not shown that Plaintiff's Jones Act claim was fraudulently pleaded; and (2) even if Plaintiff's Jones Act claim was fraudulently pleaded, cases arising under the general maritime law filed in state court are not removable absent an independent basis of jurisdiction.[123] Before addressing Plaintiff's motion, the Court will first consider C&C Fishery's argument that FECA precludes Plaintiff from asserting a Jones Act claim as a matter of law.

### 1.    Whether FECA precludes Plaintiff's Jones Act Claim

As a preliminary matter, the Court notes that C&C Fishery asserts that, because Decedent was allegedly a federal employee under either the Magnuson-Stevens Fishery Conservation and Management Act or the Marine Mammal Protection Act, Plaintiff's exclusive remedy lies in

---

[119] *Burchett*, 48 F.3d at 175; *Lackey*, 990 F.2d at 207.

[120] *Lackey*, 990 F.2d at 207 (quoting *Preston v. Grant Advertising, Inc.*, 375 F.2d 439, 440 (5th Cir. 1967)).

[121] *Burchett*, 48 F.3d at 175–76 (quoting *Lackey*, 990 F.2d at 207) (internal quotation marks omitted).

[122] *Lackey*, 990 F.2d at 207.

[123] *See* Rec. Doc. 10.

FECA.[124] Thus, C&C Fishery asserts that Plaintiff cannot bring a Jones Act claim, and that, while

Plaintiff argues that a FECA beneficiary may file suit against a responsible third party, C&C

Fishery is immune from any civil action by a fisheries observer.[125]

    As both parties agree, Jones Act suits generally may not be removed from state court.[126]

Accordingly, to defeat Plaintiff's motion to remand, C&C Fishery must show that "there is no

possibility that plaintiff would be able to establish a cause of action" under the Jones Act, and all

disputed questions of fact and ambiguities in law must be resolved in favor of Plaintiff.[127]

    The Jones Act explicitly limits a seaman's right to recovery to when "his employer's

negligence is the cause, in whole or in part, of his injury."[128] Here, it is undisputed that Riverside

was Decedent's employer.[129] The Court notes that, while Defendant Riverside was dismissed from

this matter subsequent to its removal to this Court, the Court's jurisdiction is determined at the

time of removal.[130] Thus, contrary to Plaintiff's contentions, Riverside's dismissal from this case

---

[124] *See* Rec. Doc. 37 at 2.

[125] *Id.*

[126] *See* Rec. Doc. 14 at 3 (C&C Fishery alleging that "[i]n general, Jones Act claims are not removable under 28 U.S.C. § 1445(a) . . . ."); *see also Lackey v. Atl. Richfield Co.*, 990 F.2d 202, 207 (5th Cir. 1993) (holding that it is "axiomatic that Jones Act suits may not be removed from state court").

[127] *Lackey*, 990 F.2d at 207; *see also Hufnagel v. Omega Serv. Indus., Inc.*, 182 F.3d 340, 345 (5th Cir. 1999); *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. 1981) ("The burden of persuasion placed upon those who cry 'fraudulent joinder' is indeed a heavy one.").

[128] *Hasty v. Trans Atlas Boats Inc.*, 389 F.3d 510, 512 (5th Cir. 2004) (quoting *Gautreaux v. Scurlock Marine*, 107 F.3d 331, 335 (5th Cir. 1997)); *see also* 46 U.S.C. § 30104 ("A seaman injured in the course of employment or, if the seaman dies from the injury, the personal representative of the seaman may elect to bring a civil action at law, with the right of trial by jury, *against the employer.*" (emphasis added)); *McAleer v. Smith*, 57 F.3d 109, 115 (1st Cir. 1995) ("The Jones Act remedy is available only against the seaman's employer.").

[129] *See* Rec. Doc. 10-1 at 5 ("Plaintiff asserting that "Defendant concedes that Decedent was hired by Defendant as a fishery observer and reported to a Riverside Technology Program Manager"); *see also* Rec. Doc. 1 at 4 (Riverside stating in its Notice of Removal that "Decedent was hired by Riverside as a Fishery Observer II (5T) on October 12, 2013").

[130] *See, e.g.*, *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 265 (5th Cir. 1995) (determining that

after it was removed from state court does not affect the Court's analysis here on whether this case was properly removed to federal court.[131]

While both parties agree that Decedent was employed by Riverside,[132] the parties dispute whether C&C Fishery has adduced sufficient evidence to show that Decedent was a federal employee subject to the provisions of FECA.[133] However, the Court need not resolve this dispute at this time, as FECA's provision establishing that it is the exclusive remedy for injured federal employees further provides that it "does not apply to a master *or a member of a crew of a vessel*."[134] As the Supreme Court has made clear, the maritime term "member of a crew" carries the same meaning as "seaman" under the Jones Act.[135] While the Supreme Court has held that this provision does not apply to "civilian seaman *on public vessels*,"[136] neither party has alleged that the MORNING STAR was a public vessel. C&C Fishery argues that FECA precludes Plaintiff from

---

courts must consider the jurisdictional facts as of the time the case is removed to determine if a non-diverse party was fraudulently joined, and that subsequent amendments to the complaint in federal court cannot defeat removal); *Walker v. Nabors Offshore Drilling, Inc.*, 91 F. Supp. 2d 907, 910 (E.D. La. 2000) (Fallon, J.) (determining the plaintiff's Jones Act was fraudulently asserted, "as he must have known at the time of filing that there was no reasonable possibility of establishing a Jones Act claim"); *see also Cobb v. Delta Exports, Inc.*, 186 F.3d 675, 678 (5th Cir. 1999) (stating that the fraudulent joinder doctrine only applies to those parties that exist on the record in state court at the time of removal).

[131] *See* Rec. Doc. 29 at 2 (Plaintiff stating that all federal questions were resolved or are now moot since Riverside was dismissed).

[132] Rec. Doc. 10-1 at 7; Rec. Doc. 14 at 1.

[133] *See* Rec. Doc. 10-1 at 7 (Plaintiff arguing that Defendants have failed to meet their burden of proof of showing that Decedent was a federal employee).

[134] 5 U.S.C. § 8116(c) (emphasis added) (providing that the "liability of the United States or an instrumentality thereof under this subchapter or any extension thereof with respect to the injury or death of an employee is exclusive . . . However, this subsection does not apply to a master or a member of a crew of a vessel").

[135] *See Sw. Marine, Inc. v. Gizoni*, 502 U.S. 81, 86–87, (1991) (noting that the term "member of a crew of any vessel," is "a phrase that is a 'refinement' of the term 'seaman' in the Jones Act.").

[136] *Johansen v. United States*, 343 U.S. 427, 440–41 (1952) (emphasis added).

bringing a Jones Act claim, but C&C Fishery fails to address this exclusionary provision for FECA or show why it would not apply if the Court found that Plaintiff had sufficiently alleged that Decedent was a "member of a crew of a vessel."[137] As stated *supra*, the "heavy" burden is on the removing party to show that "there is no possibility that plaintiff would be able to establish a cause of action,"[138] and C&C Fishery has not shown that FECA precludes Plaintiff's Jones Act claim if the Court determines at this stage that Plaintiff has sufficiently alleged that Decedent was a "member of a crew of a vessel." Accordingly, the Court will proceed to consider whether C&C Fishery has met its burden of showing that Decedent was not "a member of a crew of a vessel," *i.e.* a Jones Act seaman,[139] such that Plaintiff's Jones Act claim was "fraudulently pleaded."

### 2.    Whether Plaintiff is a "Seaman" Pursuant to the Jones Act

Plaintiff asserts that she brought this cause of action in state court pursuant to the Jones Act and that Decedent was a Jones Act seaman, and thus Defendants were precluded from removing this action to federal court.[140] Plaintiff argues that C&C Fishery has not met its high burden of proving that Decedent was not a Jones Act seaman as defined by the Supreme Court in *Chandris v. Latsis*.[141] In her motion to remand, Plaintiff asserts that the only evidence attached to

---

[137] The Court notes that C&C Fishery addresses this exclusionary provision in its reply memorandum in support of its motion for summary judgment. Rec. Doc. 23 at 2–3. However, C&C Fishery merely avers that the exclusionary provision to FECA does not apply because Decedent does not qualify as a "member of a crew of a vessel." *Id.* Thus, the Court will proceed to address the parties' arguments regarding whether C&C Fishery has met its burden of showing that Decedent does not qualify as a Jones Act seaman.

[138] *Lackey*, 990 F.2d at 207; *see also Hufnagel v. Omega Serv. Indus., Inc.*, 182 F.3d 340, 345 (5th Cir. 1999); *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. 1981) ("The burden of persuasion placed upon those who cry 'fraudulent joinder' is indeed a heavy one.").

[139] *See Sw. Marine, Inc. v. Gizoni*, 502 U.S. 81, 86–87, (1991) (noting that the term "member of a crew of any vessel," is "a phrase that is a 'refinement' of the term 'seaman' in the Jones Act.").

[140] Rec. Doc. 10-1 at 1–2.

[141] *Id.* at 4 (citing *Chandris v. Latsis*, 515 U.S. 347, 368 (1995)).

the Notice of Removal in support of Defendants' arguments that Decedent was not a Jones Act seaman is the Declaration of Shawn Sutherland, the Human Resources Director of Riverside.[142] However, Plaintiff contends that Sutherland does not have personal knowledge as to what duties Decedent performed while aboard the MORNING STAR, and that Sutherland admits that Decedent at least provided "observer services" on the vessel.[143] In response, C&C Fishery argues that Decedent was only aboard the MORNING STAR as a fishery observer to conduct scientific research pursuant to a federal government contract.[144] C&C Fishery alleges that observers like Decedent do not participate in the fishing operations of a vessel in any capacity, and thus Plaintiff's Jones Act claim was fraudulently pleaded.[145]

The Jones Act provides a cause of action and remedy for "seaman injured in the course of employment."[146] The Jones Act expressly incorporates the general provisions of the Federal Employees Liability Act ("FELA").[147] FELA cases filed in state court may not be removed to federal district courts.[148] Thus, the Fifth Circuit has held that it is "axiomatic that Jones Act suits may not be removed from state court."[149] Accordingly, to defeat Plaintiff's motion to remand, C&C Fishery must meet its "heavy" burden of demonstrating that Plaintiff's Jones Act claim was

---

[142] *Id.* at 5.

[143] *Id.*

[144] Rec. Doc. 14 at 1.

[145] *Id.* at 3–4.

[146] 46 U.S.C. § 30104; *see Chandris, Inc. v. Latsis*, 515 U.S. 347, 354 (1995).

[147] 46 U.S.C. § 30104.

[148] 28 U.S.C. § 1445(a).

[149] *Lackey v. Atl. Richfield Co.*, 990 F.2d 202, 207 (5th Cir. 1993).

fraudulently pleaded,[150] *i.e* that "there is no possibility that plaintiff would be able to establish a cause of action."[151] All disputed questions of fact and ambiguities in law must be resolved in favor of Plaintiff.[152]

The Jones Act does not define the term "seaman."[153] However, in *Chandris, Inc. v. Latsis*, the Supreme Court articulated a two part test to determine if a maritime employee qualifies as a "seaman" under the Jones Act.[154] Pursuant to the *Chandris* test, to qualify as a Jones Act seaman: (1) "[t]he worker's duties must contribute to the function of the vessel or to the accomplishment of its mission;" and (2) "the worker must have a connection to a vessel in navigation (or an identifiable group of vessels) that is substantial in terms of both its duration and its nature."[155] The Supreme Court also noted approvingly in *Chandris* that the Fifth Circuit "seems to have identified an appropriate rule of thumb for the ordinary case: A worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act."[156]

---

[150] *Lackey*, 990 F.2d at 207 ("Defendants must prove that the allegations of the complaint were fraudulently made, and any doubts should be resolved in favor of the plaintiff . . . defendants' burden of persuasion is a heavy one . . . ."); *Sanders v. Cambrian Consultants (CC) Am., Inc.*, 132 F. Supp. 3d 853, 855 (S.D. Tex. 2015).

[151] *Lackey*, 990 F.2d at 207; *see also Hufnagel v. Omega Serv. Indus., Inc.*, 182 F.3d 340, 345 (5th Cir. 1999); *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. 1981) ("The burden of persuasion placed upon those who cry 'fraudulent joinder' is indeed a heavy one.").

[152] *Lackey*, 990 F.2d at 207; *Hufnagel*, 182 F.3d at 345; *Miller Brewing Co.*, 663 F.2d at 549 ("The burden of persuasion placed upon those who cry 'fraudulent joinder' is indeed a heavy one.").

[153] *See Chandris*, 515 U.S. at 354.

[154] *Id.*

[155] *Id.* at 376.

[156] *Id.* at 371. *See also Zertuche v. Great Lakes Dredge & Dock Co., LLC*, 306 F. App'x 93, 95 (5th Cir. 2009) ("The Supreme Court adopted this court's general rule of thumb that a 'worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act.'").

Furthermore, the Supreme Court has held that the determination of whether a worker qualifies as a "seaman" is a mixed question of law and fact.[157] "The inquiry into seaman status is of necessity fact specific; it will depend on the nature of the vessel and the employee's precise relation to it."[158] Thus, "[i]f reasonable persons, applying the proper legal standard, could differ as to whether the employee was a 'member of a crew,' it is a question for the jury."[159] The Supreme Court has instructed that "the total circumstances of an individual's employment must be weighed to determine whether he had a sufficient relation to the navigation of vessels and the perils attendant thereon" to qualify as a Jones Act seaman, rather than "a land-based employee who happens to be working on the vessel at a given time."[160] Moreover, the Supreme Court has noted that the seaman status inquiry should focus on the maritime worker's current assignment, rather than the "overall course of a worker's service with a particular employer."[161] For example, "[i]f a maritime employee receives a new work assignment in which his essential duties are changed, he is entitled to have the assessment of the substantiality of his vessel-related work made on the basis of his activities in his new position."[162] The Fifth Circuit has recognized that changes in a worker's basic assignment can constitute an exception to its "thirty percent requirement."[163]

---

[157] *Chandris*, 515 U.S. at 369.

[158] *Wilander*, 498 U.S. at 356.

[159] *Id.* (quoting *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 355 (1991)).

[160] *Id.* at 369–70.

[161] *Id.* at 371–72.

[162] *Id.* at 372.

[163] *Zertuche*, 306 F. App'x at 95.

In *Lackey v. Atlantic Richfield Company*, the Fifth Circuit considered whether a district court had erred in denying a motion to remand based on a finding that the plaintiffs had fraudulently pleaded a Jones Act claim in their complaint filed in state court.[164] In *Lackey*, the decedent was hired as an inspector to work on a barge that was contracted out to other corporate defendants, and the plaintiffs brought a Jones Act claim in state court alleging that defendants constituted the decedent's employer.[165] The Fifth Circuit noted that the plaintiffs' complaint "sets forth that: (i) [decedent] was a seaman; (ii) [decedent] was injured in the course and scope of his employment in violation of the Jones Act; and (iii) [decedent] was a borrowed servant of the defendants."[166] The Fifth Circuit concluded that "[t]hese allegations suffice to state a Jones Act claim."[167] The Fifth Circuit further determined that, while the defendants attacked the plaintiffs' Jones Act claim by providing affidavits showing that the decedent was employed by another entity, the Fifth Circuit held that it was not persuaded "that defendants' affidavits *establish beyond dispute* that no borrowed servant employment relationship existed."[168] According to the Fifth Circuit, the plaintiffs were not required to produce evidence proving that the decedent was a borrowed servant to defeat removal, and that the defendants had the burden of demonstrating that the plaintiffs'

---

[164] 990 F.2d 202, 207 (5th Cir. 1993).

[165] *Id.* at 204.

[166] *Id.* at 207.

[167] *Id.*

[168] *Id.* (emphasis added).

allegations "were undisputedly false."[169] Therefore, the Fifth Circuit held that remand was proper.[170]

Here, Plaintiff, the mother of Decedent, filed a "Seaman's Original Petition for Damages" in Louisiana state court.[171] Plaintiff's Petition alleges that "[f]or all times pertinent, Decedent was a seaman pursuant to the Jones Act" and that Plaintiff "brings this cause of action pursuant to the Jones Act (46 U.S.C. § 30104) and under the general maritime law."[172] Plaintiff further contends in her Petition that "[t]his is a Jones Act case and is not removable pursuant to 28 U.S.C. § 1445(a)."[173] According to Plaintiff's Petition, Decedent was aboard a vessel owned and operated by Defendant C&C Fishery as an employee of Defendant Riverside, and was "acting within the course and scope of his employment as a seaman in service of the Vessel."[174] Accordingly, considering the Fifth Circuit's guidance in *Lackey*, the Court finds that Plaintiff's allegations "suffice to state a Jones Act claim," as Plaintiff has alleged that: (1) Decedent was a seaman; (2) Decedent was injured in the course and scope of his employment in violation of the Jones Act; and (3) Decedent was employed by Defendant Riverside while working "in service of" Defendant C&C Fishery's vessel.[175]

---

[169] *Id.* at 208.

[170] *Id.*

[171] Rec. Doc. 1-1.

[172] *Id.* at 1–2.

[173] *Id.* at 2.

[174] *Id.* at 1–2.

[175] *Lackey*, 990 F.2d at 207; Rec. Doc. 1-1 at 1–2.

However, C&C Fishery argues that Plaintiff's Jones Act claim was fraudulently pleaded, as it alleges Decedent was not a Jones Act seaman while aboard the MORNING STAR.[176] In support of its argument that Plaintiff's Jones Act claim was fraudulently pleaded, C&C Fishery points to two Declarations: (1) the Declaration of Shawn Sutherland, the Human Resources Director for Riverside, Decedent's employer;[177] and (2) the Declaration of Tom Huynh, the Captain of the MORNING STAR.[178] In Sutherland's Declaration, he states that he is familiar with Decedent's work and his employment with Riverside.[179] Sutherland contends that Riverside does not own any vessels and did not own or operate the MORNING STAR.[180] Sutherland avers that Riverside is a federal government contractor that was working pursuant to a contract with NOAA/NMFS in March 2016 at the time that Decedent fell ill.[181]

According to Sutherland, Riverside's contract with NOAA/NMFS provides for, in relevant part, the provision of fishery observers like Decedent on certain vessels.[182] Sutherland alleges that these fishery observers "do not participate in navigation of fishing vessels or in fishing operations, do not serve as deckhands aboard the fishing vessels, do not stand regular watches aboard the fishing vessels, and do not have any financial interest in the performance of the fishing vessels."[183]

---

[176] *See* Rec. Doc. 1 at 4–5.

[177] *See* Rec. Doc. 1 at 45; Rec. Doc. 1-2; Rec. Doc. 14-3.

[178] *See* Rec. Docs. 14-1, 14-2.

[179] Rec. Doc. 1-2 at 1.

[180] *Id.*

[181] *Id.* at 2.

[182] *Id.*

[183] *Id.*

Rather, Sutherland asserts that Riverside's "fishery observer guidelines instruct that fishery observers are guests aboard the fishing vessels."[184] Sutherland goes on to note that Decedent was hired as a fishery observer in 2013 and promoted in 2015, and that, as a "Fishery Observer III," he received direction from the NOAA Fisheries Lab in Miami, Florida.[185] According to Sutherland, the NOAA Fisheries Lab trains the observers, "sets the requirements, protocols, and procedures for the position," determines which vessels will be observed, and receives the collected data.[186] Sutherland further states that fishery observers like Decedent were tasked with collecting catch data for conservation and management purposes as directed by NOAA/NMFS, which typically included data on the fish caught and their location, environmental information, biological samples, fishery violations, and marine pollution violations.[187]

Sutherland contends that Decedent was directed to provide fishery observer services on multiple vessels pursuant to Riverside's contract with NOAA/NMFS, including aboard: (1) the REBEL QUEEN out of Panama City, Florida, in May 2015; (2) the CHRISTOPHER JOE out of Fort Pierce, Florida, in July 2015; (3) the CAPT BOB out of Sea Isle City, New Jersey, in December 2015; (4) the MR FINN out of Wanchese, North Carolina, in December 2015; (5) the JOSHUA NICOLE out of Fort Pierce, Florida, in January 2016; (6) the SEA QUEEN III out of Dulac, Louisiana, in February 2016; and (7) the MORNING STAR out of Dulac, Louisiana, in March 2016.[188] Sutherland further avers that during this time period Decedent also "performed

---

[184] Id.

[185] Id.

[186] Id. at 2–3.

[187] Id. at 3.

[188] Id.

work for the Pelagic Observer Program" in Miami, Florida, and weighed fish during offloading in Newfoundland, Canada.[189]

In her motion to remand, Plaintiff points out that Sutherland only acts as the Human Resources Director at Riverside "and, presumably, spent little if any time aboard the vessel with Decedent."[190] Thus, Plaintiff argues that Sutherland cannot have personal knowledge of the actual duties that were performed or were to be performed by Decedent while aboard the vessel, and therefore cannot establish C&C Fishery's high burden of showing that Plaintiff was not a Jones Act seaman pursuant to the *Chandris* test.[191]

The Court also notes that C&C Fishery attached the Declaration of Tom Huynh, the captain of the MORNING STAR, to its opposition to Plaintiff's motion to remand.[192] In his Declaration, Huynh avers that C&C Fishery has no contract with Riverside and is the sole owner of the MORNING STAR.[193] Huynh contends that Decedent was onboard the vessel as a fisheries observer to record and collect fishery data for the federal government.[194] Huynh also asserts that during Decedent's time aboard the MORNING STAR from March 13, 2016, to March 16, 2016, Decedent "did not perform any fishing operations, did not participate in any navigational activities, did not serve as a deckhand, did not stand watch, and did not participate in housekeeping or

---

[189] *Id.*

[190] Rec. Doc. 10-1 at 5.

[191] *Id.*

[192] Rec. Docs. 14-1, 14-2.

[193] Rec. Doc. 14-1 at 1.

[194] *Id.*

cooking."[195] Finally, Hunyh contends that C&C Fishery had no contact with anyone from Riverside while Decedent was onboard the MORNING STAR.[196]

Based on the foregoing and resolving all disputed questions of fact and ambiguities in law in favor of Plaintiff,[197] the Court finds that C&C Fishery has not met its "heavy" burden of showing that Plaintiff's Jones Act claim was fraudulently pleaded. In particular, the Court finds that the two Declarations provided are insufficient to establish "beyond dispute" that "there is no possibility that plaintiff would be able to establish a cause of action" under the Jones Act.[198]

As stated *supra*, to determine if Decedent qualifies as a Jones Act seaman, the Court must consider whether: (1) Decedent's duties contributed to the function of the vessel or to the accomplishment of its mission; and (2) if Decedent had a connection to a vessel in navigation (or an identifiable group of vessels) that is substantial in terms of both its duration and its nature.[199] Here, the Court first notes that Sutherland, an employee of Riverside, states that it was the NOAA Fisheries Lab, and not Riverside or C&C Fishery, that assigned Decedent to certain vessels and crews and determined the training and responsibilities of Decedent.[200] In fact, in Riverside's "Statement of Undisputed Facts," which was attached to Plaintiff's motion to remand, Riverside admits that it had no contact or communications with Decedent or C&C Fishery once Decedent

---

[195] *Id.* at 2.

[196] *Id.*

[197] *See Hufnagel v. Omega Serv. Indus., Inc.*, 182 F.3d 340, 345–46 (5th Cir. 1999) ("The court may deny remand where, but only where, resolving all disputed facts and ambiguities in current substantive law in the plaintiff's favor, the court determines that the plaintiff has no reasonable possibility of establishing a Jones Act claim on the merits.").

[198] *Lackey*, 990 F.2d at 207; *B., Inc.*, 663 F.2d at 545.

[199] *Chandris*, 515 U.S. at 376.

[200] Rec. Doc. 1-2 at 2–3.

boarded the MORNING STAR.[201] Additionally, as Plaintiff points out, Sutherland's Declaration does not provide any information as to what Plaintiff's specific duties and responsibilities were going to be while aboard the MORNING STAR, and it does not show what contributions Decedent may or may not have made to the function of the vessel or its mission.[202] Indeed, Plaintiff also points out that Sutherland conceded that Decedent at least "was directed to provide observer services" while aboard the MORNING STAR.[203]

Moreover, the Declaration of Tom Huynh only purports to show that Decedent did not engage in certain activities while aboard the MORNING STAR from March 13 to March 16, 2016, such as navigating, serving as a deckhand, cooking, or standing watch.[204] However, Plaintiff has alleged that, "[s]hortly after embarking, Decedent became extremely ill, and was unable to move from his bunk and could only communicate in gurgles and grunts."[205] Plaintiff further alleges that the captain of the vessel, Tom Hunyh, first noticed these symptoms "as early as late afternoon March 13, 2016."[206] Thus, the fact that Hunyh points out that Decedent did not engage in certain activities from March 13, 2016, to March 16, 2016, during the same time period that Decedent allegedly was extremely ill and could not leave his bunk, does not foreclose a finding that Decedent could qualify as a Jones Act seaman. This is particularly true here, where Decedent cannot himself provide information regarding his activities and the facts of Decedent's status and responsibilities

---

[201] *See* Rec. Doc. 10-2 at 4.

[202] Rec. Doc. 10-1 at 5.

[203] *Id.*

[204] Rec. Doc. 14-1.

[205] Rec. Doc. 1-1 at 3.

[206] *Id.*

on multiple voyages are disputed or not yet fully developed.[207]  Accordingly, the Court finds that C&C Fishery has not established "beyond dispute" that Decedent's duties did not contribute to the function of the vessel or to the accomplishment of its mission, *i.e.* the first prong of the *Chandris* test.[208]

Furthermore, both Declarations fail to show that Decedent did not have a substantial connection to a vessel in navigation or "an identifiable group of vessels," *i.e.* the second prong of the *Chandris* test.[209] Indeed, Sutherland's Declaration instead shows that Decedent's employment with Riverside required him to spend significant time on vessels, as Sutherland states that Decedent joined at least seven voyages over a ten month period in the course of his employment with Riverside.[210] Additionally, Sutherland's Declaration fails to establish what percentage of Decedent's time and job responsibilities are spent on and off vessels, how much time Decedent spent on each vessel as Riverside's employee, and what duties Decedent had on each vessel. Sutherland's Declaration also fails to show how long Decedent was to stay with the MORNING STAR in particular or what duties he had while aboard the vessel.[211]

As the Fifth Circuit has instructed, courts must consider a maritime worker's "total employment" with his employer to determine whether he satisfies "the general 30-percent rule" of

---

[207] *See, e.g.*, *Lockhart ex rel. Lockhart v. Applied Coating Servs., Inc.*, No. 05-1630, 2005 WL 1574208, at *4 (E.D. La. June 24, 2005) (Vance, J.) (noting that the facts regarding the decedent's status remain to be developed, "particularly considering that Lockhart is deceased and cannot himself provide information or an affidavit regarding his activities").

[208] *Chandris*, 515 U.S. at 376.

[209] *Id.*

[210] Rec. Doc. 1-2.

[211] *Id.*

thumb in the Fifth Circuit to qualify as a Jones Act seaman, *i.e.* whether the worker spends less than 30% of his time in the service of a vessel in navigation.[212] Here, however, C&C Fishery has not submitted sufficient evidence for this Court to find that Plaintiff spent less than 30% of his time in service of a vessel during his employment with Riverside or what percentage of his time was to be spent aboard the MORNING STAR.[213] As noted *supra*, the Court is required to resolve all disputed questions of fact in favor of Plaintiff. For example, in *Waller v. American Seafoods Company*, then-District Court Judge Clement found that, while the defendant's evidence established that the plaintiff "generally worked as a land-based pipefitter," the plaintiff's assignment to a 20-day voyage "could be enough to render him a seaman."[214] Thus, the *Waller* court found that the defendant had not met its "heavy" burden of showing the plaintiff's Jones Act claim was fraudulently pleaded such that there was "no possibility" that the plaintiff would be able to establish the requisite connection to a vessel to be a Jones Act seaman.[215] Likewise here, C&C Fishery's evidence fails to show that Decedent's connections to a vessel or an identifiable group of vessels were so insubstantial in terms of both duration and nature that it is "beyond dispute" that Decedent is not a Jones Act seaman under the *Chandris* test.

As previously noted, the determination of whether a maritime worker qualifies as a Jones Act seaman is a mixed question of law and fact typically reserved for the factfinder, and the Court

---

[212] *Zertuche*, 306 F. App'x at 96. *See also Chandris*, 515 U.S. at 371.

[213] *Cf. Skinner v. Schlumberger Tech. Corp.*, 655 F. App'x 188, 192 (5th Cir. 2016) (noting that the evidence showed that the plaintiff did not spend 30% of his time in service of a single vessel or a fleet of vessels, and thus the district court did not err in denying the plaintiff's motion to remand).

[214] *Waller v. Am. Seafoods Co.*, No. 94-3940, 1995 WL 83993, at *1 (E.D. La. Feb. 23, 1995) (Clement, J.).

[215] *Id.*

must take into consideration the "total circumstances of an individual's employment."[216] Here, the Court finds that the two Declarations, the only evidence presented by Defendants, are insufficient to establish beyond dispute that Plaintiff's Jones Act claim was fraudulently pleaded. Additionally, neither Defendant has submitted any other evidence upon which the Court could conclude Plaintiff's Jones Act claim was fraudulently pleaded, such as Decedent's employment records, the NOAA Fisheries Lab's instructions to Decedent regarding his duties and responsibilities while aboard vessels, or information as to Decedent's duties and responsibilities throughout his employment with Riverside during each of his seven voyages.[217]

C&C Fishery cites to several non-binding cases in support of its argument that Plaintiff's Jones Act claim was fraudulently pleaded.[218]  For example, C&C Fishery cites to *O'Boyle v. United State*s, where the Eleventh Circuit determined that a biologist was not a "seaman" for purposes of the Jones Act.[219] However, that case is clearly distinguishable, as the court was considering whether the plaintiff had alleged sufficient facts in support of a Jones Act claim to survive a Rule 12(b)(6) motion to dismiss,[220] rather than whether the claim was fraudulently pleaded, *i.e.* whether there was *no possibility* that plaintiff would be able to establish a cause of action under the Jones

---

[216] *Chandris*, 515 U.S. at 369.

[217] *See, e.g.*, *Zertuche*, 306 F. App'x at 97 (noting that the district court erred in finding that a Jones Act claim was fraudulently pleaded and remand was not proper, as the defendant had not submitted any employment records to refute the plaintiff's claim that he spent 50% of his time working as a deckhand).

[218] Rec. Doc. 14 at 3–5 (citing *Sanders v. Cambrian Consultants (CC) America, Inc.*, 132 F. Supp. 3d 853, 855 (S.D. Tex. 2015); *Mason v. Alaska Observers, Inc.*, 2003 WL 23181008 (W.D. Wash Aug. 29, 2003); *Bank of America N.A. v. Pacific Lady*, 2001 WL 33389208 (W.D. Wash Nov. 22, 2000); *O'Boyle v. United State*s, 993 F.2d 211 (11th Cir. 1993)).

[219] 993 F.2d 211 (11th Cir. 1993).

[220] *Id.* at 213–14.

Act.[221] As the Fifth Circuit has noted in the similar context of fraudulent joinder cases, although the fraudulent joinder doctrine and Rule 12(b)(6) standards "appear similar," the scope of the inquiry is different and the "burden of persuasion on those who claim fraudulent joinder is a heavy one."[222]

Moreover, the "seaman" inquiry is a fact-intensive one, and C&C Fishery has not shown that the *O'Boyle* district court decided the Rule 12(b)(6) motion on materially similar facts as the Court must consider here. In other words, C&C Fishery has not shown that Decedent here and the plaintiff in *O'Boyle* shared similar duties, contributions to the vessel, and connections to vessels in navigation such that the result under the *Chandris* test would be the same. Indeed, the *O'Boyle* court noted several facts that weighed against a finding that the plaintiff was a Jones Act seaman that are inapplicable here, such as the fact that the plaintiff had been hired as a "special project employee" to travel with a Japanese vessel pursuant to an international treaty and that the English-speaking plaintiff and the Japanese-speaking crew of the vessel could not even communicate with one another.[223]

C&C Fishery's citations to other non-binding district court decisions are equally unpersuasive for similar reasons. For example, C&C Fishery points to *Sanders v. Cambrian Consultants (CC) America, Inc.*, where a court in the Southern District of Texas found that a "marine mammal observer" who was statutorily required to be on the defendant's vessel while it was conducting seismic surveys was not a Jones Act seaman, and thus removal of the case to

---

[221] *Lackey*, 990 F.2d at 207; *B., Inc.*, 663 F.2d at 545.

[222] *Travis v. Irby*, 326 F.3d 644, 649 (5th Cir. 2003).

[223] *O'Boyle*, 993 F.2d at 213.

federal court was proper.[224] However, as the Court noted *supra*, the "seaman" inquiry is a fact-intensive one, and C&C Fishery has not shown that Decedent here and the plaintiff in *Sanders* shared similar duties, contributions to the vessel, and connections to vessels in navigation such that the *Chandris* test result would be the same. For example, here, Defendants' own evidence establishes that Decedent spent significant time with vessels in navigation over ten months while employed by Defendant Riverside, while the *Sanders* plaintiff only appeared to point to one voyage as her connection "to a vessel in navigation (or an identifiable group of vessels)."[225] Furthermore, the *Sanders* court expressly relied on the Eleventh Circuit opinion in *O'Boyle* distinguished *supra*, as well as several non-binding district court cases that dismissed Jones Act claims at the summary judgment stage where the plaintiffs also had a burden of producing some evidence in support of their Jones Act claims.[226]

In other words, C&C Fishery has failed to point to any statutory authority or binding case law that clearly establishes that Decedent was not a seaman pursuant to the Jones Act such that it would be "beyond dispute" that "there is no possibility that plaintiff would be able to establish a cause of action" under the Jones Act.[227] By contrast, Plaintiff points to a more analogous case from a court in the Eastern District of Louisiana, *Kattelman v. Otis Engineering Corporation*.[228] In *Kattelman*, the defendant argued that removal of a wireline worker's Jones Act case was proper

---

[224] 132 F. Supp. 3d 853, 855 (S.D. Tex. 2015).

[225] *Chandris*, 515 U.S. at 376.

[226] *Sanders*, 132 F. Supp. 3d 853, 855 (citing *O'Boyle*, 993 F.2d at 213; *Belcher v. Sundad, Inc.*, No. 07-346, 2008 WL 2937258, at *1 (D. Or. July 18, 2008); *Chauvin v. Furgo-Geoteam SA*, No. 06-2290, 2007 WL 2265233, at *1 (E.D. La. Aug. 1, 2007) (Porteous, J.)).

[227] *Lackey*, 990 F.2d at 207; *B., Inc.*, 663 F.2d at 545.

[228] 701 F. Supp. 560, 566 (E.D. La. 1988) (Feldman, J.).

by pointing to two Fifth Circuit cases upholding district courts' decisions on motions for summary judgment that found that wireline workers were not Jones Act seaman.[229] However, the *Kattelman* court determined that the defendants had mischaracterized the law applicable to motions to remand based on allegedly fraudulent pleadings of Jones Act claims: "Although wireline operators often are not accorded the safe harbor of the Jones Act, the Fifth Circuit has never articulated a *per se* rule that persons performing wireline functions are not Jones Act seamen."[230] Moreover, the *Kattelman* court noted that the two Fifth Circuit cases turned on a specific fact-based analysis of each plaintiff and their relationship to the vessels, rather than a broadly applicable rule holding that all wireline workers are not Jones Act seaman.[231]

Here, considering the foregoing, the Court finds that C&C Fishery has not met its high burden of showing that Plaintiff's Jones Act claim was fraudulently pleaded.[232] Congress has determined that plaintiffs pursuing claims under the Jones Act are entitled to try their case in state court without removal to federal court, and, absent clear proof of fraudulent pleadings, "the plaintiff is entitled to litigate his claim, whatever its ultimate merit, in state court."[233] Thus, the Court concludes that remand of the above-captioned matter pursuant to 28 U.S.C. § 1447(c) is proper,[234] and therefore grants Plaintiff's motion to remand.

---

[229] *Id.* (citing *Ardleigh v. Schlumberger Limited,* 832 F.2d 933 (5th Cir.1987); *Langston v. Scheumberger Offshore Services, Inc.,* 809 F.2d 1192 (5th Cir.1987)).

[230] *Id.*

[231] *Id.* at 566–67.

[232] *See, e.g.*, *Lockhart ex rel. Lockhart v. Applied Coating Servs., Inc.*, No. 05-1630, 2005 WL 1574208, at *2 (E.D. La. June 24, 2005) (Vance, J.) (finding that the defendant had not satisfied its heavy burden of showing that the plaintiff was not a Jones Act seaman, and thus remanding the case to state court).

[233] *See Lonthier v. Nw. Ins. Co.*, 599 F. Supp. 963, 965 (W.D. La. 1985).

[234] *See Meeks v. Swift Transp., Inc.*, 398 F. App'x 980, 982 (5th Cir. 2010) (noting that remands based on

### IV. Conclusion

Based on the foregoing, the Court finds that C&C Fishery has not met its burden in showing that Plaintiff's Jones Act claim is fraudulently pleaded. C&C Fishery's evidence is insufficient to establish "beyond dispute" that "there is no possibility that plaintiff would be able to establish a cause of action" under the Jones Act.[235] Moreover, C&C Fishery has not pointed to any statutory authority or case law that clearly shows that Decedent could not qualify as a seaman pursuant to the Jones Act. By contrast, Plaintiff's Petition alleges that Decedent was a Jones Act seaman, and thus removal was not proper pursuant to 46 U.S.C. § 30104.[236] The Court concludes that remand of the above-captioned matter pursuant to 28 U.S.C. § 1447(c) is proper, and therefore grants Plaintiff's motion to remand. Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Martha Sheldon's "Motion to Remand"[237] is **GRANTED** and therefore the case is remanded to the Civil District Court for the Parish of Orleans, State of Louisiana.

**NEW ORLEANS, LOUISIANA,** this ____18th____ day of July, 2017.



**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

statutory restrictions against removals are proper under Section 1447(c).

[235] *Lackey*, 990 F.2d at 207; *B., Inc.*, 663 F.2d at 545.

[236] *See Lackey*, 990 F.2d at 207.

[237] Rec. Doc. 10.